# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| SHEKEIRA SPRINGER and DONALD WILLIAMS, | ) ) ) ) |
| Plaintiffs, | ) ) Civil No. ) 13-10083-FDS |
| v. | ) ) |
| LUIS S. SPENCER, Commissioner of Correction; BRUCE GELB, Superintendent of Souza Baranowski Correctional Center; OSVALDO VIDAL, Deputy Superintendent of Operations; LESLY PIERRE, Correctional Officer; BRIAN McDONALD, Director of Security; NESTOR CRUZ, Lieutenant of Inner Perimeter Security; LARRY AMBLO, Sergeant of Inner Perimeter Security, et al., | ) ) ) ) ) ) ) ) ) ) ) ) |
| Defendants. | ) ) |

## MEMORANDUM AND ORDER ON DEFENDANTS' MOTION TO DISMISS AND PLAINTIFFS' MOTION TO AMEND

**SAYLOR, J.**

This claim arises out of a prison's denial of visitation rights to the girlfriend of an inmate. Plaintiffs Shekeira Springer and Donald Williams filed a complaint *pro se* contending that various prison officials violated their rights under the Fifth, Eighth, and Fourteenth Amendments.

On December 2, 2013, defendants moved to dismiss the complaint or, in the alternative, for summary judgment. Plaintiffs subsequently obtained counsel and then, on March 6, 2014, moved to amend the complaint, substantially altering the factual allegations, asserting additional

claims under the Fourth Amendment and state law, and setting forth new theories of liability. For the reasons set forth below the motion to dismiss will be denied and the motion to amend will be granted in part and denied in part. To the extent that defendants have moved for summary judgment, asserting additional facts in their support, that motion also will be denied without prejudice to its renewal.

## I.    Background

### A.    Facts as Stated in the Complaint

The following facts are presented as stated in the original complaint.

Donald Williams is an inmate at Souza-Baranowski Correctional Center. Shekeira Springer is his girlfriend.

On June 3, 2012, Williams was housed in a Special Management Unit of Souza-Baranowski ("South SMU"). Springer arrived at the prison approximately one half-hour prior to a scheduled 7:00 p.m. visit with Williams. After being searched, she waited, with another woman, in the non-contact visiting area.

Later, an officer entered the visiting area and pulled out a chair to one of the visiting booths. Underneath the chair, he found a package containing drugs. The officer left the area, then returned and escorted Springer and the other woman out of the room. Springer was questioned for four hours by prison officials and state police, who at some point read her *Miranda* rights to her. They searched her cellular phone and read all of her text messages. Springer consented to a search of her vehicle and a partial strip-search. No contraband or evidence of contraband was found. However, Springer believes that officials found two additional packages of drugs under the desk of the same visiting booth.

2

The then-Superintendent of the prison, Anthony Mendonsa, barred Springer from visiting Williams for a period of one year on the ground that she had attempted to introduce drugs into the facility. Springer filed an appeal of the suspension, which was denied. She also received a court summons charging her in relation to the discovered drugs. The complaint provides no additional information about the result of the summons.

Springer alleges that she felt humiliated, and Williams suffered because he could not visit with Springer or her children. Williams filed a grievance with the prison and wrote letters to Commissioner of Correction Luis Spencer and Superintendent Mendonsa, complaining about Springer's treatment and exclusion. Springer also wrote letters to Commissioner Spencer and Superintendent Osvaldo Vidal, and sent a demand letter to the Attorney General's Office.

Springer and Williams contend that Lieutenant Nestor Cruz and Sergeant Larry Amblo conducted the investigation into the incident and imposed the ban on Springer; that Director of Security Brian McDonald supported those findings; and that Correctional Officer Lesly Pierre failed to perform his duty in checking the visiting area and had Springer and Williams wrongfully accused of violating prison rules.

### B. Additional Facts as Stated in the Proposed Amended Complaint

The proposed amended complaint adds detail to the facts stated in the original complaint as well as new allegations.

During the search of Springer prior to the aborted visit, a correctional officer required her to lift her shirt and shake her bra to show that no contraband was hidden under it, to run her hands around her waistband to show that nothing was secreted under it, to reverse her pockets to show they were empty, and to remove her socks and display bare ankles. The officer also

reached inside Springer's pockets, patted down her legs and ankles, and examined the hair on her head with bands and clips removed.

The civilian side of the "no contact" visiting area is a small room with three chairs in front of three separate visiting booths. Visitors and inmates are sealed off from one another. Springer was seated in the middle booth and the other woman was seated at the first booth; the third booth was unoccupied.

At approximately 7:50 p.m., when the hour-long visit between Springer and Williams' had nearly concluded, Officer Lesly Pierre entered the visiting area with a third woman. When Pierre pulled out the chair to the third booth, he discovered a suspicious bag sitting on the seat. Pierre reported the bag to Sergeant Gregory Spring, who opened it and found a substance consistent with marijuana and 60 individually wrapped orange pills consistent with Suboxone. Spring informed Lieutenant Peter Peladeau, who instructed him to terminate the visits and strip-search all three inmates. No contraband was found on Williams or the other inmates or in their cells.

Officials held Springer for questioning in a secure environment surrounded by approximately five correctional and police officers at any one time. They did not allow her to leave until after midnight. During that time, State Trooper Dave Lamberth interviewed Springer, who stated that she did not know where the drugs came from. Her story was consistent with that of the woman in the first booth, who had been with Springer during her time in the visiting room.

State troopers, along with IPS Officers Carlos Goden and Brian Wozniak, conducted the search of Springer's vehicle. Another unknown officer (proposed defendant John Doe) searched Springer's cell phone without asking her consent to conduct the search. Doe allegedly searched

her call history, text messages, and photographs, but found nothing suggestive of drug dealing or drug possession. None of the searches uncovered tape, plastic bags, significant cash, scales, gloves, pill bottles, prescriptions for narcotics, or other suspicious items.

Wozniak's incident report states, in part, that at approximately 1:00 p.m. on June 4, 2012, a prison officer received a call from a confidential informant that he heard inmates talking about drugs in the South SMU and that a package of drugs had been left there during the afternoon visits.

Upon release, an officer told Springer that she was barred from entering any Department of Correction facility without the permission of Superintendent Mendonsa and that she might receive a letter summons charging drug possession at a future date. Vidal and Cruz decided the following day to bar Springer for one year, and Mendonsa affirmed that decision. On June 4, 2012, Mendonsa mailed a formal Notice of Barred Visitor to Springer. Springer appealed for reinstatement on June 11, 2012, but the new Superintendent, Bruce Gelb, denied the request on June 26, 2012, on the ground that "the matter is currently under investigation." (Am. Compl., Ex. 3).

Allegedly, Gelb, Vidal, and Cruz received or should have received information demonstrating that Springer and Williams were not involved in drug smuggling but nevertheless denied Springer's request to reinstate visiting privileges. Williams also observed a note within a prison status-report sheet indicating that he was involved in a plot to introduce contraband. Such records may adversely affect his placement and conditions during his sentence.

From the time that Williams entered DOC custody on April 22, 2011, until October 30, 2012, he was confined to SMU except for a single night. He was confined to a solitary cell for

159 hours out of 168 hours per week during those 18 months. The reason given for segregated confinement was not any disciplinary infraction but instead per "103 CMR 423.08 pending classification," according to the response to a grievance Williams filed. In late 2011, Williams was advised that he was being held in SMU due to "enemies issues," but he was not held in a protective-custody cell pursuant to 103 DOC 422.00 *et seq.*, in which he would have greater opportunities and privileges. Williams filed and appealed various grievances concerning his long-term segregation, all of which were denied.

On December 5, 2011, a reclassification board recommended that Williams be screened for incarceration out of state. The complaint alleges that DOC officials frequently cite possible out-of-state transfer as a pretext to hold inmates in SMU without disciplinary reason for extended periods of time. Williams was not eligible for out-of-state transfer because of two open indictments awaiting trial in Suffolk County.

On October 30, 2012, DOC released Williams into the general population. Williams has since returned to SMU twice due to threats made by others, but never due to disciplinary infractions.

SMU visiting hours and capacity are much more limited than those for the general population. At least once, on February 6, 2014, that has resulted in prison officials denying Springer a visit with Williams because he had been reassigned to SMU. Confinement in SMU also imposes a limit of three 20-minute telephone calls per week.

The complaint alleges that, as a result of the actions of the proposed amended defendants, Springer suffered emotional distress, humiliation, indignities, embarrassment, degradation, injury to reputation, and restrictions on her freedom of association. Williams alleges injury to

reputation and unjustified restrictions on personal contact, educational opportunity, vocational opportunity, athletic opportunity, and family relationships.

### C. Additional Facts Proffered by Defendants in the Motion for Summary Judgment

Defendants assert the following additional facts in support of summary judgment.

Preventing the introduction of drugs into DOC facilities is a high priority for prison administrators. SMU visiting rooms were routinely inspected before and after each group of visitors and at the beginning of each shift. Therefore, defendants contend that the SMU visiting room would have been inspected around 3:00 p.m., prior to the evening visiting hours.

### D. Procedural Background

On January 1, 2013, plaintiffs Springer and Williams filed a *pro se* complaint in this Court. On December 2, 2013, defendants filed a motion to dismiss, or in the alternative, for summary judgment. On January 24 and February 6, 2014, an attorney entered appearances for Springer and Williams, respectively. On March 6, 2014, plaintiffs, through their newly retained counsel, moved for leave to amend the complaint. On March 26, 2014, plaintiffs voluntarily dismissed their claims against defendants Spencer, Pierre, McDonald, and Amblo and Springer's claims under the Fifth Amendment and Mass. Gen. Laws ch. 127, § 36.

## II. Standards of Review

### A. Motion to Amend

Under Fed. R. Civ. P. 15, a party may amend its pleading once as a matter of course within 21 days after serving it, or within 21 days after service of a responsive pleading or motion under Fed. R. Civ. P. 12(b), (e), or (f). *See* Fed. R. Civ. P. 15(a)(1). In all other cases, a party may amend a pleading only with consent of the opposing party or leave of the court. *See* Fed. R.

Civ. P. 15(a)(2). "The court should freely give leave when justice so requires." *Id.* "The leave sought should be granted unless the amendment would be futile or reward undue delay." *Abraham v. Woods Hole Oceanographic Inst.*, 553 F.3d 114, 117 (1st Cir.2009). Amendment is futile if the proposed complaint would not survive a motion to dismiss. *See, e.g.*, *Kemper Ins. Co. v. Federal Express Corp.*, 115 F.Supp.2d 116 (D. Mass. 2000).

### B. Motion to Dismiss

On a motion to dismiss, the Court "must assume the truth of all well-plead[ed] facts and give plaintiff the benefit of all reasonable inferences therefrom." *Ruiz v. Bally Total Fitness Holding Corp.*, 496 F.3d 1, 5 (1st Cir. 2007) (*citing Rogan v. Menino*, 175 F.3d 75, 77 (1st Cir. 1999)). To survive a motion to dismiss, the complaint must state a claim that is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). That is, "[f]actual allegations must be enough to raise a right to relief above the speculative level, . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* at 555 (citations omitted).

### C. Motion for Summary Judgment

The role of summary judgment is to "pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Mesnick v. General Elec. Co.*, 950 F.2d 816, 822 (1st Cir. 1991) (internal quotations omitted). Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue is "one that must be decided at trial because the evidence, viewed in the light most flattering to the nonmovant . . . would permit a rational fact finder to resolve the issue in favor of either party." *Medina-Munoz v. R.J. Reynolds Tobacco Co.*, 896 F.2d 5, 8 (1st Cir. 1990). In evaluating a summary judgment motion, the Court

indulges all reasonable inferences in favor of the non-moving party. *O'Connor v. Steeves*, 994 F.2d 905, 907 (1st Cir. 1993). When "a properly supported motion for summary judgment is made, the adverse party 'must set forth specific facts showing that there is a genuine issue for trial.'" *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (quoting Fed. R. Civ. P. 56(e)). The non-moving party may not simply "rest upon mere allegation or denials of his pleading," but instead must "present affirmative evidence." *Id.* at 256-57.

### III. Analysis

Plaintiffs assert that leave to amend is warranted because the proposed amended complaint is clearer and based on new evidence, there has been no undue delay, no prejudice to defendants will result, and the amendment is not futile.

The proposed amended complaint certainly contains more detailed and specific allegations based in part on new evidence, clarifies the causes of action, and cures defects of the original complaint, which was drafted without the assistance of a lawyer. Although plaintiffs filed suit more than one year before filing a motion to amend, little significant progress has been made in this case and plaintiffs only recently retained legal counsel. There does not, therefore, appear to be any undue delay on plaintiffs' part. *See New Balance Athletic Shoe, Inc. v. Puma USA, Inc.*, 118 F.R.D. 17, 21 (D. Mass. 1987) (granting leave to amend in part because "the information came into the possession of the plaintiff after the original complaint was filed").

Nor would amendment unduly prejudice defendants. Because little substantial discovery has occurred, the marginal costs of amendment are low. There will be some delay in resolution of the case, but not to the extent that it constitutes undue prejudice.

The sole remaining ground upon which the motion to amend could be denied is possible

9

futility, which is measured at this stage by whether the amended complaint would survive a motion to dismiss. Plaintiffs have voluntarily dismissed many of the claims with which the motion to dismiss took issue, and incorporated the remaining claims with greater detail into the proposed amended complaint. If the more-detailed amended complaint would not withstand a motion to dismiss, then the original complaint would not either, and therefore there is no reason to consider them separately. Accordingly, to determine whether amendment is futile, the Court will address defendants' motion to dismiss and plaintiffs' motion to amend in tandem.

As an initial matter, the parties disagree as to the scope of 42 U.S.C. § 1983, under which the proposed amended complaint asserts six of its seven claims. For the sake of clarity, to bring a valid claim under § 1983, a plaintiff must allege that some "person" acting under color of state law deprived him or her of "rights, privileges or immunities secured by the constitution." 42 U.S.C. § 1983. The Eleventh Amendment permits suits under § 1983 for prospective relief against state officials sued in their official capacities, but bars retroactive monetary relief. *Ex parte Young*, 209 U.S. 123, 168 (1908); *Edelman v. Jordan*, 415 U.S. 651, 678 (1974); *see Wang v. New Hampshire Bd. of Registration in Med.*, 55 F.3d 698, 700–01 (1st Cir. 1995). To obtain monetary relief, a plaintiff must sue state officials in their individual capacities. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 102-03 (1984).

There is no vicarious liability under § 1983. Supervisors may be liable "when their own action or inaction, including a failure to supervise that amounts to gross negligence or deliberate indifference, is a proximate cause of the constitutional violation." *Guzman v. City of Cranston*, 812 F.2d 24, 26 (1st Cir. 1987) (*quoting Lozano v. Smith*, 718 F.2d 756, 768 (5th Cir. 1983)). This encompasses situations where a supervisor "formulates a policy or engages in a practice

that leads to a civil rights violation committed by another," and where he has notice of the conditions likely to lead to a deprivation of constitutional rights. *Camilo-Robles v. Hoyos*, 151 F.3d 1, 7 (1st Cir. 1998).

Accordingly, plaintiffs may properly sue defendants, who are state officials, in their official capacities for prospective injunctive relief and in their individual capacities for monetary damages. A defendant may be entitled to qualified immunity against suits in his individual capacity, but not against suits in his official capacity.

### A. Springer: Substantive and Procedural Due Process (Counts 1 and 2)

The Due Process Clause of the Fourteenth Amendment prohibits a state from depriving a person of "life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. This guarantee has both substantive and procedural components.

#### 1. Substantive Due Process

"As distinguished from its procedural cousin . . . a substantive due process inquiry focuses on 'what' the government has done, as opposed to 'how and when' the government did it." *Mongeau v. City of Marlborough*, 492 F.3d 14, 18 (1st Cir. 2007). Generally, where "a plaintiff's substantive due process claim challenges the specific acts of a state officer, the plaintiff must show both that the acts were so egregious as to shock the conscience and that they deprived [her] of a protected interest in life, liberty, or property." *Pagan v. Calderon*, 448 F.3d 16, 32 (1st Cir. 2006).

Springer contends that defendants' failure to conduct an adequate investigation of the incident or their deliberate disregard of the results of any investigation violated her substantive due process rights under the Fourteenth Amendment. In particular, the amended complaint

alleges that each of the defendants were involved in the purportedly arbitrary decision to deny Springer visitation with Williams.

Conduct must be "truly outrageous, uncivilized, and intolerable" to shock the conscience. *Hasenfus v. LaJeunesse*, 175 F.3d 68, 72 (1st Cir. 1999). "The Due Process Clause does not impose liability every time someone with state authority causes harm; otherwise, the Constitution would be downgraded to a font of tort law." *McConkie v. Nichols*, 446 F.3d 258, 260 (1st Cir. 2006) (internal quotation and citation omitted). To state a claim, there usually must be "physical or psychological abuse, or significant interference with a protected relationship, such as the parent-child relationship." *Id.*

While the complaint makes plausible allegations that the one-year suspension was arbitrary—because defendants had access to information indicating that Springer was not involved in the introduction of drugs into the prison—that action was not so arbitrary as to shock the conscience. Even granting the relationship between Williams and Springer some level of protection, the availability of other means of communication and support render the interference not so significant as to constitute a constitutional violation. Accordingly, the motion to amend will be denied as to count 1.

## 2. **Procedural Due Process**

"The requirements of procedural due process apply only to the deprivation of interests encompassed by the Fourteenth Amendment's protection of liberty and property." *Board of Regents v. Roth*, 408 U.S. 564, 569 (1972); *see also Aponte-Torres v. University of Puerto Rico*, 445 F.3d 50, 56 (1st Cir. 2006). Analysis of procedural due process analysis proceeds in two steps: "We first ask whether there exists a liberty or property interest of which a person has been

deprived, and if so we ask whether the procedures followed by the State were constitutionally sufficient." *Swarthout v. Cooke*, 131 S.Ct. 859, 861 (2011). Once the deprivation of a constitutionally protected liberty or property interest is established, what process is due is determined by balancing three factors: (1) "the private interest that will be affected by the official action," (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards;" and (3) "the Government's interest." *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).

Springer alleges that defendant Gelb violated her procedural due process rights by failing to undertake a proper review of the suspension. The reason given for denying her appeal—that the "matter is under investigation"—and the failure to reinstate her privileges at the conclusion of that investigation are, she contends, unlawful.

The parties contest the extent to which a First Amendment right of association extends into the prison context and what test applies. The associational rights of a visitor to a prison generally are no greater than the rights of the prisoner with whom she wishes to associate. *See Thornburgh v. Abbott*, 490 U.S. 401, 410 n.9 (1989) (holding that "legitimate penological interests" may circumscribe the associational rights of both prisoners and those who seek to associate with them). A prisoner has no "interest in unfettered visitation [] guaranteed directly by the Due Process Clause," *Kentucky Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989), and a prison official can permanently suspend visitation rights under some circumstances, *see Robinson v. Palmer*, 841 F.2d 1151, 1156 (D.C. Cir. 1988) (upholding permanent ban on visitation between spouses after wife was caught attempting to smuggle marijuana into prison). But the Supreme Court has also assumed that inmates do retain some right of intimate association while incarcerated that cannot be curtailed arbitrarily. *See generally Overton v.*

*Bazzetta*, 539 U.S. 126 (2003).

Fortunately, the Court need not address this thorny question of constitutional law at this stage. It suffices for present purposes that Massachusetts regulations plausibly create a liberty interest in visitation that cannot be denied arbitrarily and without due process. *See* 103 CMR 483.11; 103 CMR 483.16. *Cf. Sandin v. Conner*, 515 U.S. 472, 483-84 (1995) ("States may under certain circumstances create liberty interests which are protected by the Due Process Clause"). The proposed amended complaint sets forth allegations sufficient to survive a motion to dismiss that defendants' actions violated these regulations and therefore Springer's procedural due-process rights.

Accordingly, the motion to amend will be granted as to count 2.

### B. Springer: Unreasonable Search (Count 3)

The Fourth Amendment guarantees the right "to be secure . . . against unreasonable searches and seizures." The protection is applicable to the states under the Fourteenth Amendment. Springer alleges that defendant Doe violated this right by searching her cell phone without her consent or other exception to the warrant requirement.[1]

Defendants have not contended that the claim is futile, asserted a claim of qualified immunity, or alleged cause for the search. And it appears that the allegations are sufficient to state a claim under the Fourth Amendment.[2] Accordingly, the motion to amend will be granted as to count 3.

---

[1] Although Springer noted the search of her phone in the original complaint, in the amended complaint, the facts are expanded and the assertion of a cause of action under the Fourth Amendment are new.

[2] Indeed, the First Circuit has held that search of a cell phone's data incident to arrest, without a warrant and without other exception to the warrant requirement, is *per se* unreasonable under the Fourth Amendment. *United States v. Wurie*, 728 F.3d 1, 3 (1st Cir. 2013) *cert. granted*, 134 S. Ct. 999 (2014). Here, Springer was not under arrest and *a fortiori* the search of her cell phone was, on its face, unreasonable.

14

C.     **Williams:  Substantive and Procedural Due Process (Counts 4 and 5)**

Williams alleges that defendants violated his substantive due process rights under the Fourteenth Amendment by imposing a one-year visitation ban on Springer and his substantive and procedural due-process rights by confining him for an extended period of time in SMU.

As to the visitation ban, for the reasons stated above regarding Springer's substantive due-process claim, the suspension does not shock the conscience.  The proposed amended complaint therefore fails to state a claim as to the alleged violation of Williams' substantive due-process rights.

Defendants also argue that the allegations underlying the claim of unconstitutional confinement are unrelated to the allegations of the original complaint and the motion to amend should be denied on that ground.  However, it is apparent that amendment may be denied on the alternative ground of futility, because defendants would be entitled to qualified immunity.

For all but one night during the period, from April 22, 2011, until October 30, 2012, Williams was housed in SMU at Souza-Baranowski and therefore subject to restrictions not imposed on the general prison population.  After October 30, 2012, he has returned twice to SMU.  The stated reason for his confinement under those conditions was not punishment, but because he was pending classification and purportedly for his own protection.

Another inmate held for ten months in SMU at Souza-Baranowski sued over those same conditions and the lack of meaningful process to challenge such confinement, leading the Supreme Judicial Court to hold that "segregated confinement on awaiting action status for longer than ninety days gives rise to a liberty interest entitling an inmate to notice and a hearing." *LaChance v. Comm'r of Correction*, 463 Mass. 767, 777-78 (2012).  However, the SJC specifically stated that it was announcing the rule "for the first time," *id.*, and that the defendants

were entitled to qualified immunity. The SJC issued the *LaChance* opinion on November 27, 2012, after Williams had been released into the general prison population.

Because "it would not have been clear to reasonable officers" at the time that Williams's long-term confinement, like LaChance's, would violate his due process rights, defendants here are entitled to qualified immunity. Accordingly, the motion to amend the complaint will be denied as to counts 4 and 5.

### D. Williams: Cruel and Unusual Punishment (Count 6)

The Eighth Amendment prohibits the infliction of "cruel and unusual punishment." This prohibition clearly encompasses "inherently barbaric" punishments, *Graham v. Florida*, 130 S.Ct. 2011, 2021 (2010), and conditions of confinement that impose "unnecessary and wanton infliction of pain," *Estelle v. Gamble*, 429 U.S. 97, 102-03 (1976). What is "cruel and unusual" within the meaning of the amendment is determined according to norms that "currently prevail." *Atkins v. Virginia*, 536 U.S. 304, 311 (2002).

The amended complaint asserts a claim under the Eighth Amendment, which is applicable to the states through the Fourteenth Amendment, based on the combined effect of defendant Gelb's imposition of non-disciplinary segregated confinement and suspension of visitation, which allegedly serve no legitimate penological interest.

Defendants reiterate the argument that the underlying facts are unrelated to those of the original complaint and that the motion to amend should therefore be denied. However, the alternative ground of futility again provides a more apt ground upon which to resolve the issue.

Plaintiffs argue that the sum of many small infringements may be greater than their parts, and urge that the combined impact of the suspension of visitation and SMU confinement was cruel and unusual. But even considered together, the suspension and confinement did not "create

inhumane prison conditions," deprive Williams of "basic necessities," "fail to protect [his] health or safety," or "involve the infliction of pain or injury, or deliberate indifference to the risk that it might occur." *Overton v. Bazzetta*, 539 U.S. at 137; *see id.* (holding that the withdrawal of visitation privileges for a limited period of time is a permissible means of effecting discipline in a prison); *LaChance*, 463 Mass. at 777-78 (finding that assignment to a more restrictive prison unit is permissible, although extended incarceration under such conditions implicate due process rights). The Supreme Court has suggested that arbitrary application of a prison regulation could implicate the Eighth Amendment. *See Overton*, 539 U.S. at 137 ("If the withdrawal of all visitation privileges were permanent or for a much longer period, or if it were applied in an arbitrary manner to a particular inmate, the case would present different considerations."). But a reasonable officer in 2011 would not have known that a one-year suspension of visitation rights while Williams was housed in SMU constituted an Eighth Amendment violation. Therefore, even if there was a constitutional violation, defendants would be entitled to qualified immunity.

Accordingly, the motion to amend will be denied as to count 6.

### E. Williams and Springer: Illegal Visitation Policy (Count 7)

State prison regulations for inmates housed in SMUs for administrative or protective reasons provide that

> [i]nmates shall normally have opportunities for visitation similar to general population unless articulable reasons for withholding such privileges exist. The length and number of visits may be limited due to space, schedules, personnel constraints or when there is a substantial reason to justify limitation.

103 CMR 423.09(e). Plaintiff seeks a declaratory judgment that defendant Gelb's visitation policy violates this regulation.

To be sure, prison administrators have broad discretion to fashion prison policies. *See*

*Bazetta*, 539 U.S. at 131-32. A prison regulation "is valid if it is reasonably related to legitimate penological interests. *Turner v. Safley*, 482 U.S. 78, 89 (1987). However, based on the allegations in the complaint, there is a plausible claim that defendant Gelb's policy falls outside permissible bounds. Accordingly, the motion to amend will be granted as to count 7.

In sum, the motion for leave to file an amended complaint will be granted in part and denied in part. In making that determination, the Court has considered the arguments defendants asserted in their motion to dismiss and for summary judgment to the extent that they were applicable. Because leave to amend is granted, at least in part, defendants' motion will be dismissed, but without prejudice to its renewal at a later date.

## IV. Conclusion

For the foregoing reasons,

1. defendants' motion to dismiss, or in the alternative, for summary judgment is DENIED without prejudice to its renewal;

2. plaintiffs' motion to amend is GRANTED as to counts 2, 3, and 7 of the proposed amended complaint and otherwise DENIED without prejudice; and

3. plaintiff should file an amended complaint that reflects this order within 14 days of this order, or by June 17, 2014.

**So Ordered.**

/s/ F. Dennis Saylor
F. Dennis Saylor IV
Dated: June 3, 2014          United States District Judge