# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| SHEKEIRA SPRINGER and<br>DONALD WILLIAMS,<br><br>　　　　　　　Plaintiffs,<br><br>　　　v.<br><br>BRUCE GELB, SUPERINTENDENT OF<br>SOUZA-BARANOWSKI CORRECTIONAL<br>CENTER;  OSVALDO VIDAL, individually;<br>LT. NESTOR CRUZ, individually; and<br>OFFICER JOHN DOE, individually,<br><br>　　　　　　　Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Civil Action No. 13-10083-FDS |

## DECLARATION OF M. FRANK BEDNARZ

1.　　I serve as counsel for the Plaintiffs, Shekeira Springer and Donald Williams, in this matter with Eric Christianson.  I am familiar with the facts and circumstances of this case.

### Exhibits

2.　　Attached to this Declaration as Exhibit 1 is a true and correct copy of Plaintiffs' First Set of Requests for Production ("First RFPs"), served on August 25, 2014.

3.　　Attached to this Declaration as Exhibit 2 is a true and correct copy of Defendants' Response to Plaintiffs' First Set of Requests for Production, served on October 24, 2014.[1]

4.　　Attached to this Declaration as Exhibit 3 is a true and correct copy of the Protective Order entered for this case on January 8, 2015, Dkt. No. 96.

---

[1] To allow Defendants' counsel to deal with personal matters, Plaintiffs assented to extend the time for Defendants to respond to First RFPs.

## Plaintiffs' Attempt To Obtain Video

5.      Plaintiffs First RFPs requested, among other things, "Any and all video and audio records related to the facts alleged in the Complaint that were created June 3, 2012…"  Ex. 1, Request No. 4.

6.      In their response to the First RFPs dated October 24, 2014, Defendants did not indicate whether any such video exists.  Defendants' response stated:

> No audio exists.  The surveillance videos have been requested.  To the extent that the surveillance videos exist, Defendants reserve the right to objections, as said videos must first be viewed by Defendants' counsel and discussed with Defendants.

Ex. 2 at 3.

7.      On December 1, 2014, I discussed outstanding discovery requests in person with Defendants' counsel during breaks and following the deposition of Sgt. Spring, a DOC employee.  Attorney C. Raye Poole suggested that a protected order would have to be entered for the production of certain discovery.

8.      With respect to video, Attorney Poole stated Defendants would oppose production due to potential Criminal Offender Record Information ("CORI") information that purportedly could be contained on the video.[2]

9.      In any event, in an effort to address Defendants' CORI concern, Plaintiffs agreed to a very restrictive Proposed Protective Order, which specifically provides for treatment of alleged CORI information.  In particular, the agreed Protective Order, which was entered by the court essentially verbatim on January 8, 2015, states that "Plaintiffs' counsel has propounded discovery seeking the disclosure of certain documents/surveillance video, including

---

[2] That said, Attorney Poole stated on March 10, 2015 that as of that date Defendants' counsel had still not reviewed any of the video(s), did not know what they contain, how many videos exist, or what their combined length may be. *See* ¶ 17, *infra*.

documents/surveillance video that constitute or contain Intelligence Information and Criminal

Offender Record Information ("CORl") as defined by G.L. c. 6, § 167."  Ex. 3 at 1-2.[3]

10.     According to the Protective Order, "Documents that consist of or contain CORI

shall not be disseminated to Plaintiffs or to any current or former inmate, or except as provided

herein, to anyone who is not employed by Goodwin Procter LLP."  Ex. 3 at 5.

11.     Further, under the Protective Order, any material can be designated as "HIGHLY

CONFIDENTIAL — ATTORNEYS' EYES ONLY," which explicitly covers "all documents

produced subject to this Order that contain Intelligence Information or CORl."  Ex. 3 at 4.

Material so designated may not be disclosed to the Plaintiffs without prior written consent.  *Id.*

These concessions are extraordinary because prior to the appearance of counsel, Plaintiffs would

have needed to conduct discovery *pro se*.

12.     The Protective Order was entered January 8, 2015.  Ex. 3.

13.     Through most the month of January, Attorney Poole was unavailable for personal

reasons, which she had disclosed to me on December 1, 2014.  On January 28, 2015, I sent

Attorney Poole a message inquiring as to the status of discovery.  I wrote:

> I recall that you needed to review extant video from June 3, 2012
> prior to production.  When might we expect that?

14.     On February 5, 2015, Attorney Poole sent me an email advising that she had

obtained the surveillance videos from SBCC from the time of the incident.  But Attorney Poole

also wrote that in her view, the video would need to be redacted before any of it could be viewed

by me, because allegedly "the videos contain identifiable inmates, implicating CORI, and

visitor[s' privacy] . . . ."  Ms. Poole had not at this time examined the video(s).

---

[3] Plaintiffs reject the characterization of video as either Intelligence Information or CORI, but this protective order was assented to in hopes of expediting discovery of the video(s) and other discovery.  Plaintiffs reserve the right to later dispute the designation of the video(s) as Intelligence Information or CORI once Plaintiffs' counsel has an opportunity to review it.  Plaintiffs will confer with Defendants to minimize any disagreement.

ACTIVE/81317699.3

15.     In an effort to resolve outstanding discovery issues the case, together with my co-counsel Eric Christianson, I conferenced telephonically with Attorney Poole.  The conference began at 2:30 p.m. and continued until approximately 3:30 p.m. on February 25, 2015.  Defendants' position was that Plaintiffs' counsel could not view the video for two reasons.  First, the video may contain images of SBCC inmates, and Ms. Poole argued that Massachusetts' CORI statute protects images of inmates and prevents opposing counsel from viewing unredacted video images of inmates.  Second, Defendants contend that privacy concerns prevent opposing counsel from viewing unredacted images of visitors to a prison.  Attorney Poole explained that it was DOC policy not to allow opposing counsel to view surveillance video showing prisoners or visitors to a prison without a court order.  Attorney Poole maintained that DOC policy would require Plaintiffs to obtain a court order to view the video even within the controlled environment of the DOC's offices.

16.     At the status conference on March 2, 2015, I advised the Court that Plaintiffs would likely file the instant motion to compel.  The Court exhorted the parties to carefully confer before filing such a motion.  Therefore, I sent an email to Defendants' counsel on March 3, 2015 requesting details concerning the video so that we could better evaluate Defendants' arguments.  The parties agreed to a meet-and-confer teleconference for March 10, 2015.

17.     On March 10, 2015, I again conferenced telephonically with Attorney Poole regarding the video(s) with my co-counsel, Eric Christianson.  The conference began at 2:00 p.m. and continued until approximately 2:30 p.m.  Attorney Poole informed me that she had not yet reviewed the video(s) and was therefore uncertain about its overall length and contents, and further did not know how many video(s) of the incident existed and from which location(s) they may have been taken.

ACTIVE/81317699.3

18.     In any event, Ms. Poole advised that Defendants cannot assent to production of the videos and would not agree to review and redact the unknown amount of video.  Attorney Poole reiterated Defendants' position that according to DOC policy, she could not produce the surveillance video unless I obtained a court order.  Attorney Poole stressed that her only legal objections to producing the surveillance video were based on Massachusetts CORI law and concerns for the privacy of visitors to the prison.

I declare under penalty of perjury that the foregoing is true and accurate to the best of my knowledge.

March 18, 2015

5

## <u>CERTIFICATE OF SERVICE</u>

I, M. Frank Bednarz, hereby certify that a copy of the foregoing document, filed through the CM/ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) on March 18, 2015.


Dated: March 18, 2015                                    *<u>/s/ M. Frank Bednarz</u>*